UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANDREW B SHEETS, individually

    Plaintiff,

v.                                      Case No.: 2:19-cv-484-FtM-38MRM

CITY OF PUNTA GORDA,
FLORIDA,

    Defendant.
_____/

## **OPINION AND ORDER**[1]

Before the Court is Plaintiff Andrew Sheets' Motion for Preliminary Injunction (Doc. 27) and Defendant City of Punta Gorda, Florida's response in opposition (Doc. 42). The Court held oral argument on the matter. For these reasons, the Court denies the Motion.

## **BACKGROUND**

This is a case about video recording inside a government building. (Doc. 23). The City has a municipal ordinance prohibiting video and sound recording without the consent of those being recorded (the "Ordinance"). Punta Gorda Code § 15-48(e). This prohibition applies to City Hall and the City Hall Annex.[2] *Id.* at § 15-48(d)-(e). To test the Ordinance, Sheets went to City Hall wearing a body camera.

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

[2] These are separate buildings, but that distinction does not appear relevant. No party argues the buildings should be treated differently.

Once inside, Sheets walked into the City clerk's office and asked for a copy of the Ordinance. The City employee behind the counter asked if she was being recorded and told Sheets that she did not consent to recording. Another City employee walked over and refused her consent too. In the end, the City employees gave Sheets a copy of the Ordinance, so he left City Hall and went to the City police station. There, Sheets asked to speak with the police chief before an officer issued him a trespass warning. The officer directed Sheets not to return to City Hall or the Annex for one year.

Sheets filed a two-count Complaint, alleging First and Fourteenth Amendment violations. (Doc. 23). These claims are facial and as-applied challenges.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (internal quotation marks and citation omitted). So preliminary injunctions are the exception, not the rule. *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003). The point of this relief is to preserve the status quo until a final decision on the merits. *Antoine on behalf of I.A. v. Sch. Bd. of Collier Cty.*, 301 F. Supp. 3d 1195, 1202 (M.D. Fla. 2018).

To justify a preliminary injunction, the movant must demonstrate (1) "a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). Movants must "clearly establish" their burden of persuasion on each element. *Callahan v. U.S. Dep't of Health and Human Servs. through Alex Azar II*, 939 F.3d 1251,

1257 (11th Cir. 2019) (citation omitted). If the first element is unproven, a court can deny preliminary injunction without considering the others. *Pittman v. Cole*, 267 F.3d 1269, 1292 (11th Cir. 2001).

## DISCUSSION

Sheets failed to show a substantial likelihood of success on the merits, which is necessary to get the extraordinary remedy of a preliminary injunction. The Court, therefore, need not analyze the remaining injunction elements, and it can simply deny the Motion. *Id.*

**A. First Amendment**

The Complaint's First Amendment challenge is facial and as applied. But neither the pleadings nor briefing distinguish between the two.[3]

"The First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest." *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000). Like all First Amendment protections, this right is "subject to reasonable time, manner and place restrictions." *Id.* Here, the Court assumes without deciding that Sheets had a First Amendment right to record City employees while they worked in City Hall because the City does not argue otherwise. Having concluded Sheets had a First Amendment right, the Court must determine the scope of that right.

"It is by now clear that the First Amendment does not guarantee access to property just because it is owned by the government." *Bloedorn v. Grube*, 631 F.3d 1218, 1230

---

[3] Facial and as-applied challenges are different and subject to different standards. Sheets pleads and briefs the two without much distinction. But the Court notes he mainly seeks facial relief to strike down the Ordinance.

3

(11th Cir. 2011). Instead, "courts use 'forum analysis to evaluate government restrictions on purely private speech that occurs on government property.'" *Keister v. Bell*, 879 F.3d 1282, 1288 (11th Cir. 2018) (quoting *Walker v. Tex. Div. Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239, 2250 (2015)). There are several different forums. *Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of Law v. Martinez*, 561 U.S. 661, 679 & n.11 (2010). One type is a limited public forum. *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 469-70 (2009). Here, the parties agree City Hall is a limited public forum. *See also* Punta Gorda Code § 15-48(d) (designating City Hall as a limited public forum).

"This distinction matters because the type of forum determines the level of scrutiny applied." *Keister*, 879 F.3d at 1288. Ordinances regulating speech in limited public forums are not subject to strict scrutiny. *E.g.*, *Summum*, 555 U.S. at 469-70. This forum "exists where a government has reserved [it] for certain groups or for the discussion of certain topics." *Barrett v. Walker Cty. Sch. Dist.*, 872 F.3d 1209, 1224 (11th Cir. 2017) (alteration accepted) (quoting *Confederate Veterans*, 135 S. Ct. at 2250). So a limited public forum is not "open to the public at large for discussion of any and all topics." *Id.* And it "can be set up to grant only 'selective access' to [the] class" for which it is reserved. *Id.* (quoting *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 679-80 (1998)). For that reason, regulating a limited public forum need not be content neutral. *E.g.*, *id.* at 1225. Instead, restrictions on a limited public forum need only be (1) reasonable and (2) viewpoint neutral. *Christian Legal*, 561 U.S. at 679 & n.11.

Here, Sheets did not carry his burden to show the Ordinance is unreasonable or viewpoint discriminatory. Thus, he is not entitled to the extraordinary and drastic remedy of a preliminary injunction that enjoins a municipal ordinance before trial. *See*

4

*Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990) (noting preliminary injunctions of legislative enactments "must be granted reluctantly and only upon a clear showing").

### 1. Reasonableness

First, Sheets did not demonstrate the Ordinance is unreasonable.

To survive a First Amendment challenge, the Ordinance must be reasonable. *Summum*, 555 U.S. at 470. Reasonableness "must be assessed in light of the purpose of the forum and all the surrounding circumstances." *Bloedorn*, 631 F.3d at 1231 (quoting *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 809 (1985)). Because the government chooses how wide to swing open the gate of a limited public forum, it may allow access only to certain speakers based on their identity. *Id.* (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 49 (1983)). So "a speaker may be excluded . . . 'if he is not a member of the class of speakers for whose especial benefit the forum was created.'" *Id.* (quoting *Cornelius*, 473 U.S. at 806). Importantly, a restriction "need not be the most reasonable or the only reasonable limitation" to withstand a constitutional challenge. *Cornelius*, 473 U.S. at 809.

"The Government, like any private landowner, may preserve the property under its control for the use to which it is lawfully dedicated." *Sentinel Commc'ns Co. v. Watts*, 936 F.2d 1189, 1201 (11th Cir. 1991) (internal quotation marks and citation omitted). Likewise, a government "workplace, like any place of employment, exists to accomplish the business of the employer." *Cornelius*, 473 U.S at 805. "It follows that the Government has the right to exercise control over access to the [government] workplace in order to avoid interruptions to the performance of the duties of its employees." *Id.* at 805-06.

5

Based on the preliminary injunction record, the Ordinance places reasonable restrictions on recording at City Hall given its purpose and context. The purpose of City Hall is to conduct "legitimate public business." Punta Gorda Code § 15-48(d); (Doc. 42-6). And the Ordinance restricts recording within City Hall without the consent of those being recorded.[4] Punta Gorda Code § 15-48(e). If someone violates the Ordinance and refuses to stop recording, the City considers that person a disruption of City business. *Id.* According to the City's affidavits, prior unconsented recording created disruptions for employees conducting City business. (Docs. 42-2; 42-3; 42-4). Videos of several City employees circulated on the internet, leading to death threats, suspicious packages in the mail, and so many threatening calls that the City had to shut down its phone lines. (Docs. 42-3; 42-4). Nor does the Ordinance completely exclude Sheets—or anyone else—from City Hall. Sheets can record in any public part of City Hall if he is not recording a person who does not consent. Considering this evidence, the Court cannot say a restriction on unconsented recording is unreasonable considering City Hall's purpose and these circumstances. *See Cornelius*, 473 U.S. at 809-10 (stating "the Government need not wait until havoc is wreaked [on its workplace] to restrict access to a nonpublic forum"). As the Supreme Court noted, restrictions on limited public forums "need not be the most reasonable or only reasonable limitation" to survive a legal challenge. *Id.* at 809.

Still, says Sheets, the Ordinance is unreasonable because it does not limit the time someone may be barred from City Hall. So as the argument goes, the Ordinance allows law enforcement to expel violators for unlimited lengths of time. Yet the Ordinance simply empowers City employees to ask the police to issue a trespass warning. Nothing in the

---

[4] Exempted from this prohibition are public meetings and law enforcement activities.

Ordinance signifies that City employees control the duration of the trespass warning. Further, Sheets' ban is limited in time (one year) and geographic scope (City Hall and the Annex). Weighed against the City's evidence, Sheets offers no legal support for saying this limited restriction is unreasonable. Nor has Sheets pointed to a single instance in which the City issued open-ended bans from government property.

Sheets also asserts the Ordinance is unreasonable because City Hall has surveillance cameras, so the City is disrupting business with unconsented recording. Yet the Ordinance exempts "law enforcement activities." Punta Gorda Code § 15-48(e). And using security cameras in a government building is almost undoubtedly a law enforcement activity. In any event, without more, the City using security cameras would not open the limited public forum to unconsented recording by visitors.

Thus, the Court determines Sheets failed to carry his burden on reasonableness.

*2. Viewpoint Neutral*

Second, Sheets did not show the Ordinance is viewpoint discriminatory.

"A restriction on speech constitutes viewpoint discrimination 'when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.'" *Jackson v. McCurry*, 762 F. App'x 919, 930 (11th Cir. 2019) (quoting *Rosenberger v. Rector & Visitors of Univ. of Vir.*, 515 U.S. 819, 829 (1995)). Viewpoint and content discrimination are separate, but related concepts. *E.g.*, *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2229-30 (2015). Content-based regulations target specific subject matter regardless of whether they "discriminate among viewpoints within that subject matter." *Id.* at 2230. Whereas viewpoint discrimination is "an egregious form of content discrimination" because it "targets not subject matter, but particular views taken

by speakers on a subject." *Rosenberger*, 515 U.S. at 829. "For example, a law banning the use of sound trucks for political speech—and only political speech—would be a content-based regulation, even if it imposed no limits on the political viewpoints that could be expressed." *Reed*, 135 S. Ct. at 2230.

Here, the Ordinance is facially viewpoint neutral because it does not target any viewpoint, ideology, or opinion. Rather, it regulates the conduct of all City Hall visitors equally without regard to viewpoint. Put another way, the Ordinance applies the same to everyone, no matter why they show up at City Hall with a camera. Unconsented recording and the refusal to stop is defined as a disruption of City business under the scheme. But that does not mean, as Sheets suggests, it targets viewpoint. To circumvent its viewpoint neutrality, Sheets contends the Ordinance poses a risk of viewpoint discrimination because it does not constrain City employees' ability to withhold consent to be recorded. That is where the unbridled or unfettered discretion doctrine comes in. *See Southworth v. Bd. of Regents of Univ. of Wis. Sys.*, 307 F.3d 566, 574 n.4 (7th Cir. 2002).

"It is long-settled that 'when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially.'" *Barrett*, 872 F.3d at 1220 (quoting *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 755-56 (1988)). Maybe "the plainest example of an unconstitutional grant of unbridled discretion is a law that gives a government official power to grant permits but that provides no standards by which the official's decision must be guided." *Id.* at 1221. In that case, "the official can grant or deny a permit for any reason she wishes." *Id.*

There are several problems with Sheets' unbridled discretion theory. The most glaring is the standard for preliminary injunctions, and Sheets has not pointed to a single case applying this doctrine to a similar speech restriction. Some others follow.

First, Sheets says the City conceded that the purpose of the Ordinance was to grant City employees with unbridled discretion to restrict recording. As the City notes, this is an inaccurate characterization of the briefing. Rather, the Ordinance seeks to prevent disruptions of the City's legitimate public business and rendering public services, along with fostering a safe and orderly environment. (Doc. 42-6 at 1-3). As discussed, the Ordinance is a reasonable restriction to fulfill that purpose. And Sheets presented no evidence to make the Court question that purpose.

Neither party located any cases directly on point, but the Court found one somewhat helpful. In *United States v. Gileno*, a court considered whether an audio and video recording ban was unconstitutionally overbroad. 350 F. Supp. 3d 910 (C.D. Cal. 2018). There, Gileno went to a federal courthouse with a video camera to film a public meeting of a local police oversight commission. *Id.* at 913. When Gileno tried to bring his camera inside, court security officers ("CSOs") stopped him from doing so. *Id.* at 913-14. No court was in session that day.[5] *Id.* at 916. The courthouse had a policy allowing cell phones and computers but prohibiting their use for taking pictures and recording sound or video without approval. *Id.* at 915-16. Gileno argued the CSOs had unfettered discretion under the policy to prevent recording of public meetings. *Id.* at 915-16. The court disagreed, holding the CSOs "did not have or exercise unfettered discretion"

---

[5] This fact is relevant because the constitutionality of recording prohibitions in courthouses is well established. *E.g.*, *United States v. Hastings*, 695 F.2d 1278, 1280-84 (11th Cir. 1983).

because they needed "to ensure the safety and privacy of both the judges and staff and make sure they were not photographed or filmed without their consent." *Id.* at 916. As described below, the Ordinance allows far more recording and far less discretion than *Gileno*. This ameliorates the risk of unconstitutional viewpoint discrimination.

Second, any discretion individuals have to prevent recording is necessarily limited. Under the Ordinance, people can only withhold their own consent for recording of themselves. Put another way, nobody can withhold consent to record anyone else. Nor can a person prevent recording of City Hall's public areas. So while the Ordinance does not delineate standards to guide withholding consent, any vested discretion is not unbridled or unfettered; rather, it is personal and limited to each individual. Here for instance, Sheets recorded the lobby of City Hall before encountering anyone. Under the Ordinance, no City employee could prevent him from doing that. Similarly, if Sheets had consent to interview someone, a City official could not prevent him from doing so. This limitation on consent ensures no person (City employee or otherwise) can completely prevent First Amendment activity. Thus, Sheets failed to show the Ordinance grants unbridled discretion sufficient to justify a preliminary injunction.

Interestingly, the Ordinance likely allows more speech than necessary. For instance, if the Ordinance simply prevented all recording, it would probably be reasonable for the reasons described above and there would be no discretion to analyze. So the Court would simply decide whether the restriction was viewpoint neutral. *See Kushner v. Buhta*, No. 16-cv-2646 (SRN/SER), 2018 WL 1866033, at *9-11 (D. Minn. Apr. 18, 2018) (holding a complete prohibition on video recording a speech in a limited public forum was constitutional because it was reasonable and viewpoint neutral), *aff'd*, 771 F. App'x 714

(8th Cir. 2019). Even so, the Court cannot conclude Sheets clearly showed he is entitled to relief simply because the Ordinance allows more speech by allowing consented recording. In *Bloedorn*, a public university prohibited outside speakers in a limited public forum on its campus. *Bloedorn*, 631 F.3d at 1234-36. Yet the university allowed outside speakers the opportunity for speech in the forum if they were sponsored by the university or one of its groups. *Id.* So like here, the speech policy in *Bloedorn* allowed more speech if the speaker obtained the sponsorship (i.e., consent) of the school or a school group. Still, that scheme was reasonable and viewpoint neutral. *Id.* The Eleventh Circuit considered this alternative avenue for speech as a basis to justify its conclusion that the plaintiff failed to establish a substantial likelihood of success on the merits of a preliminary injunction request. *Id.* at 1242.

Third, the Ordinance is not a licensing or permitting scheme that grants City officials with discretion to allow or disallow speech. Instead, it simply penalizes unconsented recording that becomes a disruption of City business after the person refuses to stop. To the extent that the Ordinance grants discretion, it vests any person—including government employees and even Sheets—with the power to withhold consent to record them inside City Hall. Punta Gorda Code § 15-48(e). All the same, says Sheets, because government employees are among people who can withhold consent, they have unbridled discretion. Sheets cannot cite a single case that supports this theory. This is likely because the doctrine typically applies in a very different context—where one or more government officials have unbridled discretion to license or permit speech. *See generally* 1 Rodney A. Smolla, *Smolla & Nimmer on Freedom of Speech*, § 6:16 (2019). First Amendment concerns are inherent in such a scenario because the officials are left

with unchecked power to engage in viewpoint discrimination. *Barrett*, 872 F.3d at 1226. What those cases do not address is this situation in which everyone, including a plaintiff, merely has the power to withhold their own consent.

While not discussed by the parties, the Court located one case relevant on this point. In *Bell v. City of Winter Park, Fla.*, the Eleventh Circuit held an ordinance granted unfettered discretion for private citizens to prohibit speech. 745 F.3d 1318, 1324-25 (11th Cir. 2014). *Bell*, however, differs. There, the forum was a traditional public forum (parks and sidewalks), which enjoy a much higher level of protection than limited public forums. *Id.* What is more, the ordinance in *Bell* enabled citizens to prohibit speech entirely, like a typical unbridled discretion case. *Id.* But the power to withhold consent here is far more limited.

Finally, there is a question of whether the Ordinance is a prior restraint at all. "A prior restraint on expression exists when the government can deny access to a forum for expression before the expression occurs." *United States v. Frandsen*, 212 F.3d 1231, 1236-37 (11th Cir. 2000). Here, anyone can enter City Hall and record a nonconsenting person without punishment or exclusion. So the Ordinance appears to be a subsequent punishment, "which regulate[s] a given type of speech by penalizing the speech only *after* it occurs." *Barrett*, 872 F.3d at 1223; *see also Otto v. City of Boca Raton, Fla.*, 353 F. Supp. 3d 1237, 1271 (S.D Fla. 2019) (holding ordinances were not prior restraints because they penalized speech after it occurred rather than establishing a permitting scheme to allow the government to prevent speech in advance). The Eleventh Circuit left open the question of if the unbridled discretion doctrine "could somehow be applied beyond the context of prior restraints." *Barrett*, 872 F.3d at 1222. Sheets argued the

Ordinance is a prior restraint because it prohibits recording unless and until consent is given. The City disagrees; so does the Court. The Ordinance does not penalize unconsented recording. Instead, it penalizes the subsequent refusals to stop recording without consent or leave City Hall because they disrupt the purpose of the forum.

In short, Sheets failed to carry his significant burden for the extraordinary and drastic remedy he seeks on the First Amendment claim.

## B. Fourteenth Amendment

Next, Sheets brings a procedural due process claim under the Fourteenth Amendment, challenging the Ordinance facially and as applied. Again, neither the pleadings nor briefing differentiate between the two. To pursue a procedural due process claim, a plaintiff must show "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011) (citation omitted). Only the first prong needs analysis because Sheets does not show substantial likelihood of success on the merits.

"Plaintiffs have a constitutionally protected liberty interest to be in parks or other city lands of their choosing that are open to the public generally." *Id.* This right likely extends to City Hall. *Cuellar v. Bernard*, No. SA-13-CV-91-XR, 2013 WL 1290215, at *4-5 (W.D. Tex. Mar. 27, 2013). That right, "of course, is not absolute." *Catron*, 658 F.3d at 1267 n.5. For instance, there is no "constitutional right to use public parks under all conditions and at all times." *Id.*; *see also Banuelos v. Martinez*, No. 1:15-cv-00010-AWI-GSA, 2015 WL 3660261, at *3 (E.D. Cal. June 11, 2015) ("Plaintiff does not enjoy a liberty interest to enter into any state office without restriction."). And "a person may forfeit this

liberty right by trespass or other violation of law." *Catron*, 658 F.3d at 1266; *Occupy Fort Myers v. City of Fort Myers*, 882 F. Supp. 2d 1320, 1338-39 (M.D Fla. 2011).

Under the plain language of the Ordinance, when a person refuses to stop recording without consent, that person is a disruption and no longer at City Hall on legitimate City business. Punta Gorda Code § 15-48(e). If, after being asked to leave, the person refuses, then the Ordinance considers the person to be a trespasser. *Id.* So the person forfeits any liberty interest in visiting City Hall, *see Catron*, 658 F.3d at 1266, and the City can restrict access to City Hall "without impacting constitutionally-protected liberty interests," *see Harrison v. Palmer*, No. 4:13cv131-WS, 2014 WL 11412696, at *4 (N.D. Fla. Nov. 5, 2014) (collecting cases). Sheets makes no argument for how a person has a liberty interest to visit City Hall under these circumstances. Despite City Hall being a government building, the public has no constitutional right to visit City Hall "under all conditions and at all times." *See Catron*, 658 F.3d at 1267 n.5. The government can control its property "for the use to which it is lawfully dedicated." *U.S. Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 129-30 (1981) (citation omitted). So it seems equally clear the City can exclude trespassers and people causing disruptions with a geographic- and time-limited trespass warning without violating a protected liberty interest. *See Harrison*, 2014 WL 11412696, at *4 (holding a citizen did not have a liberty interest to visit a state agency's office and the issued trespass warnings were not due process violations).

While Sheets relies on *Catron*, that case is distinguishable for two reasons.

First, in *Catron*, several homeless plaintiffs received trespass warnings for being in a public park. 658 F.3d at 1266-67. The Eleventh Circuit clarified plaintiffs there were

14

not trespassing when they were given trespass warnings. *Id.* at 658 F.3d at 1266 & n.4. Whereas, here, the Ordinance only allows for trespass warnings *after* a person is disrupting City business and trespassing. Punta Gorda Code § 15-48(e).

Second, because City Hall is open to the public (like the park in *Catron*), Sheets claims a protected liberty interest to visit City Hall. Sheets argues he only needs to identify that liberty interest. Yet he is mistaken. Plaintiffs must show "not only a constitutionally-protected [liberty] interest, but also a governmental deprivation of that constitutionally-protected [liberty] interest." *Arrington v. Helms*, 438 F.3d 1336, 1348 (11th Cir. 2006). The deprivation portion of that element is where Sheets drops his burden because if a person forfeits the liberty interest, then there has been no deprivation. *See Occupy Fort Myers*, 882 F. Supp. 2d at 1338-29 (holding plaintiffs failed to establish likelihood of success on the merits because there was no liberty interest in plaintiffs' use of the park).

People recording without consent are not using City Hall under ordinary conditions or for its intended purpose. The park in *Catron* was open to the public generally, and the trespass ordinance prevented plaintiffs' ordinary use of the park. 658 F.3d at 1266-67. The Eleventh Circuit stated the due process rights at issue were to use the "parks under the ordinary conditions in which these parks are made available to the general public." *Id.* at 1267 n.5. While Sheets is correct City Hall is open to the public, he ignores that it is open to the public to conduct legitimate City business. And the City may limit the use of the property to ordinary conditions for its intended purpose. *See id.*; *Occupy Fort Myers*, 882 F. Supp. 2d at 1338-39 (holding plaintiffs did not have a liberty interest to protest in a public park in any way or at any time); *Woodbury v. City of Tampa Police Dep't*, No. 8:10-CV-0772-T-30AEP, 2010 WL 2557677, at \*1-2 (M.D. Fla. June 8, 2010)

15

(holding a parent did not have a liberty interest to visit child's school and school district could indefinitely bar parent's access to school "to maintain order and prevent disruptions"), *report and recommendation adopted* 2010 WL 2557534 (June 23, 2010). Put simply, neither Sheets nor any other person has an absolute right to visit City Hall. So when the City limits the use of City Hall based on a violation of the Ordinance, it is not violating liberty interests. *See also Vincent v. City of Sulphur*, 805 F.3d 543, 548 (5th Cir. 2015) (holding a plaintiff "under investigation for threatening deadly violence against city officials" did not have a clearly established "right to notice and a hearing before being banned from entering city buildings").

At the hearing, Sheets argued he violated the Ordinance on purpose because he believes it is unconstitutional; and he wanted a pre-deprivation hearing to argue to that effect. But neither a pre- nor post-deprivation hearing was necessary because Sheets forfeited his liberty interest before the deprivation. And the remedy he seeks to invalidate the Ordinance was available in court all along. At any time, Sheets could have brought a First Amendment unbridled discretion challenge to the Ordinance without violating it. *E.g.*, *Lakewood*, 486 U.S. at 755-56 ("[O]ne who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license."). So the argument Sheets was denied due process to challenge the Ordinance falls flat.

While not dispositive, the Court notes the City's argument on factual matters over Sheets' residency. The evidence suggests that he may not be a resident of the City, which might affect the analysis on his liberty interest. Sheets does not address the issue. This is simply another factor supporting the conclusion Sheets failed to meet his burden.

Again, the remedy Sheets seeks is extraordinary. And the Court cannot conclude he carried his burden on the Fourteenth Amendment challenge.

Accordingly, it is now

**ORDERED:**

Plaintiff's Motion for Preliminary Injunction (Doc. 27) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida this 22nd day of November, 2019.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record